## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JOSEPH F. PIOTROWSKI,

                    Petitioner,

          v.                          CASE NO.  08-3143-RDR

COMMANDANT, USDB,

                    Respondent.

## O R D E R

          This petition for writ of habeas corpus was filed pursuant
to 28 U.S.C. § 2241 by petitioner while he was confined at the
United States Disciplinary Barracks, Fort Leavenworth, Kansas,
serving a sentence imposed in military court-martial proceedings[1].


## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

          Mr. Piotrowski had served in the Army for 24 years when the
following incidents occurred.  In August 2000, he drove while
intoxicated from his home in North Carolina to MacDill Air Force
Base, Florida.  Eyewitnesses saw him driving at a high rate of
speed and weaving from lane to lane before he sideswiped one
vehicle and, after swerving, hit it a second time.  In this
incident, he endangered the lives of two adults and their child in
the other vehicle.  He then accelerated away from the scene and was
observed driving in excess of 90 miles per hour.  Approximately 30
minutes later, he nearly hit a law enforcement officer's vehicle as

---

[1]      Petitioner filed a notice of change of address (Doc. 7) to Cross City
Correctional Institution, Cross City, Florida.

he was passing it, which endangered the officer. Mr. Piotrowski was pulled over after he failed to properly stop at an intersection. He was clearly intoxicated, and was taken into custody. The Army was notified, and the next day his commander, wife, and parents met at the county jail and secured his release. His license was suspended, and he was scheduled for trial in Hillsborough County Court. A few days later, Mr. Piotrowski officially requested retirement from the military; however, his request was delayed apparently due, at least partly, to these and another legal problem.

On February 11, 2001, the day before his first state trial for Driving Under the Influence of Alcohol (DUI), Mr. Piotrowski took a bus to Jacksonville, Florida, and set out for home in a recently purchased jeep. He drove without a valid driver's license, drank alcohol while driving, and became intoxicated. He was observed by a law enforcement officer in his vehicle in a restaurant parking lot, unconscious in the driver's seat with the key in the ignition. Witnesses told the officer Mr. Piotrowski had recklessly driven in the parking lot 20 minutes earlier. He was asked to perform several sobriety tests, which he failed. He refused to take a breathalyzer test. He was taken into custody and placed in the Sumter County Jail[2].

The next day Mr. Piotrowski appeared in Hillsborough County Court, pled guilty, and was convicted of DUI. He was fined, given

_____

[2]    Mr. Piotrowski eventually pled guilty in court-martial to two counts of drunken driving based upon these events in August 2000 and February 2001.

probation, and required to attend DUI rehabilitation school. He also pled no contest in Hernando County to improper passing and leaving the scene of an accident, and paid a fine.

He attended the school. Nevertheless, on April 18, 2001, Mr. Piotrowski again drove without a valid license this time from his home to a mall. After shopping at the mall, he consumed at least one half pint of whiskey immediately prior to driving. Approximately 30 minutes later, with a blood alcohol content nearly 3 times the legal limit, he ran a stop sign in a residential neighborhood and hit a vehicle driven by a pregnant woman. As a result of the impact, the woman and her 6-month old fetus died at the scene. These events culminated in the court-martial convictions he seeks to challenge in this action.

Mr. Piotrowski was prosecuted by the United States Army, and subsequently by the State of Florida, mainly for offenses arising out of the fatal crash on April 18, 2001. Prior to his military court-martial, he entered into a pretrial agreement (PTA) with the convening authority, which included a Stipulation of Fact".[3] He was convicted in court-martial consisting of a military judge upon his pleas of guilty to involuntary manslaughter, 3 counts of drunken driving, conduct unbecoming an officer, and reckless endangerment. He was sentenced on August 8, 2001, to 13½ years imprisonment and dishonorable discharge.

---

[3]     The foregoing recitation of facts is taken from the "Stipulation of Fact" entered in United States v. Piotrowski on August 2, 2001. Record of Trial (ROT) at 505.

Petitioner's case was forwarded to the Army Court of Criminal Appeals (ACCA) for mandatory review under Article 66 of the Uniform Code of Military Justice (UCMJ)[4]. He was represented during his direct appeal not only by different military defense counsel but also by privately retained civilian defense counsel. He raised nine "assignments of error", oral arguments were heard, and he was granted relief on one claim. On January 31, 2006, the ACCA substantially affirmed the convictions and 12 years of the sentence. The claims raised in the original petition before this court "mirror" some, but not all, of petitioner's claims presented to the ACCA[5].

Mr. Piotrowski then appealed to the Court of Appeals for the Armed Forces (CAAF), which granted his request for appellate review. However, after a "full briefing" by both sides, the CAAF summarily denied relief on February 8, 2007.

In May 2003, while serving his military sentence at the USDB, Mr. Piotrowski was transferred to the State of Florida and tried on charges of vehicular homicide and DUI manslaughter. He was found guilty by a jury. On May 14, 2003, he was sentenced to

---

[4]     As respondent explains in the Answer and Return, this review was "not cursory". Instead, pursuant to Article 66(c), the ACCA was required to "independently review the entire record of trial *de novo* and independently arrive at a decision that the findings and sentence are correct 'in law and fact'" and "review for error whether or not errors are assigned by the appellant." A&R (Doc. 14) at 9. In addition, pursuant to United States v. Grostefon, 12 M.J. 431, 436-377 (1982), military review courts are required to consider all issues personally specified by the accused.

[5]     Mr. Piotrowski's claims in his Petition numbered (1), (2), (3), (4), (5), (6), and (8) are identical to seven of the nine claims he lists as raised on appeal to the ACCA. He lists the same seven claims as among the nine raised on appeal to the CAAF, where he also raised his current claim (7).

a 15-year consecutive sentence on each charge.  His thirty-year state term was ordered to run concurrent to his military sentence.

Petitioner filed the instant pro se federal habeas corpus petition on June 11, 2008.  The court's initial order herein held the Petition was "mixed" in that petitioner's claim of ineffective assistance of counsel had not been exhausted.  Mr. Piotrowski was given time to show cause why his "mixed petition" should not be dismissed or to dismiss his unexhausted claim and proceed only upon exhausted claims.  In response, he filed a motion to "sever Ground Nine", his ineffective assistance of counsel claim, and to "proceed on his exhausted claims."  The court accordingly dismissed petitioner's unexhausted claim and ordered respondents to show cause on petitioner's other claims.

**CLAIMS**

Mr. Piotrowski raised 11 grounds in his Petition: (1) his pretrial agreement should be declared void and his plea improvident because, contrary to his understanding, the State of Florida prosecuted him for the "same manslaughter offenses . . . covered by his army pretrial agreement"; (2) the military judge erred by denying a defense motion to dismiss a specification under the preemption doctrine; (3) the military judge erred by failing to instruct court members to disregard portions of trial counsel's sentencing argument; (4) the military judge erred by instructing court members to disregard portions of defense counsel's sentencing argument; (5) the military judge erred by permitting petitioner's

then-current spouse and his ex-spouse to testify as rebuttal witnesses; (6) his pretrial agreement should be declared void because the convening authority failed to recommend the Naval Brig in Charleston as his place of confinement; (7) his pretrial agreement should be declared void because the prosecuting attorney in his Army court-martial testified at his Florida trial and disclosed statements made during his providency inquiry; (8) the court-martial lacked jurisdiction in that the record of trial does not contain sufficient evidence to demonstrate an appropriate exercise of court-martial convening power by Brigadier General (BG) Ferrell; (9) the pretrial agreement should be declared void and his plea improvident because his defense counsel was ineffective; (10) the military judge gave incorrect responses during the panel's deliberations to members' questions regarding petitioner's retirement; and (11) the punishment petitioner received was cruel and unusual in that he was tried twice and sentenced to 43½ years for an offense that allegedly averages 10 years nationally.


**LEGAL STANDARDS**

The federal civil courts have jurisdiction over habeas corpus actions filed under § 2241 by prisoners convicted in the courts-martial. See Burns v. Wilson, 346 U.S. 137, 139 (1953). However, review of these actions is very limited[6]. Historically,

---

[6]    This court does not simply function as another appellate court that reviews all errors raised by a military prisoner. Nor is a military appellate court a "lower court". Civilian district court review is more limited in military cases because "the military has its own independent criminal justice system governed by the Uniform Code of Military Justice." Lips v. Commandant,

review "was limited to the question of jurisdiction." <u>Fricke v. Secretary of Navy</u>, 509 F.3d 1287, 1289 (10th Cir. 2007)(citations omitted). In <u>Burns</u>, the Supreme Court extended the scope of review of court-martial proceedings, deciding that "civil courts could consider constitutional claims regarding such proceedings if the military courts had not 'dealt fully and fairly' with such claims[7]." <u>Id</u>.; <u>Templar v. Harrison</u>, 298 Fed.Appx. 763, 764 (10th Cir. 2008)(The court's review of court-martial proceedings is limited generally to jurisdictional issues and to determination of whether the military gave full and fair consideration to each of the petitioner's constitutional claims.)(citing <u>Fricke</u>, 509 F.3d at 1290; <u>see also</u> <u>Burns</u>, 346 U.S. at 142)). Where the military courts have given "full and fair consideration" to the claims presented in a petition, a federal court may not grant habeas relief "simply to re-evaluate the evidence," and should deny the petition. <u>Lips</u>, 997 F.2d at 810-11 (quoting <u>Burns</u>, 346 U.S. at 142). If an issue was presented to the military courts, the issue will be viewed as having received full and fair consideration, even if that court's opinion summarily disposed of the issue[8]. <u>Watson v. McCotter</u>, 782

_____

United States Disciplinary Barracks, 997 F.2d 808, 810 (10th Cir.), <u>cert</u>. <u>denied</u>, 510 U.S. 1091 (1993).

[7]     In <u>Burns</u>, a plurality of the United States Supreme Court stated that the district court may not review challenges to military courts-martial de novo unless the military courts have "manifestly refused to consider those claims." <u>Burns</u>, 346 U.S. at 142.

[8]     The Tenth Circuit has noted additional factors, that are not the focus in this case:

Some prior decisions from this court elaborate four factors to be considered before granting habeas review of military cases. <u>See</u>, <u>e.g.</u>, <u>Roberts v. Callahan</u>, 321 F.3d 994, 996 (10th Cir. 2003)("1.

F.2d 143, 145 (10th Cir.), <u>cert</u>. <u>denied</u>, 476 U.S. 1184 (1986);

<u>Lips</u>, 997 F.2d at 812 (The fact that the military court did not

specifically address the issue in a written opinion is not

controlling.). An issue received full and fair consideration if it

was "briefed and argued". <u>See</u> <u>id</u>. The burden is on the petitioner

to establish that the review in the courts-martial was "legally

inadequate". <u>Watson</u>, 782 F.2d at 144 (citing <u>Burns</u>, 346 U.S. at

146).

Finally, it has long been settled that a federal court

"will not entertain petitions by military prisoners unless all

available military remedies have been exhausted." <u>Schlesinger v.</u>

<u>Councilman</u>, 420 U.S. 738, 758 (1975); <u>Noyd v. Bond</u>, 395 U.S. 683,

693 (1969)(recognizing "general rule that habeas corpus petitions

from military prisoners should not be entertained by federal

civilian courts until all available remedies within the military

court system have been invoked in vain"). If a claim was not

presented to the military courts, the federal habeas court

considers the claim waived and not subject to review. <u>Watson</u>, 782

F.2d at 145; <u>Templar v. Harrison</u>, 2008 WL 754925 (D.Kan. Mar. 19,

2008), <u>aff'd</u>, 298 Fed.Appx. at 763); <u>see</u> <u>also</u> <u>Roberts</u>, 321 F.3d at

_____

The asserted error must be of substantial constitutional dimension.
2. The issue must be one of law rather than of disputed fact already
determined by the military tribunals. 3. Military considerations may
warrant different treatment of constitutional claims. 4. The
military courts must give adequate consideration to the issues
involved or apply proper legal standards." (quotation and ellipses
omitted)). Here, the dispute concerns whether (petitioner's) claim
received full and fair consideration, and thus our analysis focuses
on that inquiry.),(<u>cert</u>. <u>denied</u>, 540 U.S. 973 (2003).

<u>Templar</u>, 298 Fed.Appx. at 764, FN2.

995.

The court has carefully considered the Petition, the Answer and Return, the Traverse, and all other pleadings and materials filed by the parties including the military and state court records. Applying the foregoing legal standards, the court denies this habeas corpus petition for reasons that follow.


## EXHAUSTED CLAIMS

## GROUNDS (2), (4), AND (5)

In his Traverse, Mr. Piotrowski "admits he received full and fair consideration" on his claim, Ground (2), regarding the preemption doctrine. He also admits his claims, Grounds (4) and (5), that the judge erred by instructing members to disregard portions of defense counsel's arguments and by permitting his ex-wives to testify at sentencing "have little merit" and need not be reviewed by this court. Petitioner alleges no facts indicating the military courts refused to consider these claims. Nor has he met his burden of demonstrating either that military review was not full and fair or that the military applied improper legal standards in determining these claims. The record confirms that these claims were briefed and argued before the military courts. The court concludes that grounds (2), (4) and (5) were fully and fairly considered by the military courts and, under <u>Burns</u>, must be denied.


## GROUND (3)

The court has considered petitioner's claim, Ground (3), that the military judge erred in failing to instruct court members to disregard portions of trial counsel's argument during sentencing. The court finds that this claim was briefed and argued before the military courts, and thus was fully and fairly considered by those courts. No argument is made that incorrect legal standards were applied. Accordingly, this claim is denied.

## GROUND (6)

The court has considered petitioner's claim, Ground (6), that the PTA should be declared void and his plea improvident because the convening authority failed to recommend the Naval Brig in Charleston as his place of confinement. The record shows this claim was briefed and argued in the military courts. Petitioner has not met his burden of showing it was not fully and fairly considered. Nor does he show that incorrect legal standards were applied. Accordingly, under Burns, it is denied.

In any event, the military court records plainly controvert this claim. The record shows that a convening authority made the agreed-upon recommendation twice. Making the recommendation was all the PTA required, and the convening authority's actions fulfilled that obligation. His recommendation was rejected by the authorities who actually had discretion to determine Mr. Piotrowski's place of confinement. The record further shows that during the plea proceeding, the military judge carefully explained to Mr. Piotrowski that the decision as to where he would serve

confinement "is not made by the convening authority", the convening authority would "recommend to the Department of the Army" who does actually make that decision, the recommendation was "not binding on the Army", there was "a substantial chance" he would serve his confinement elsewhere, and all officers serve some confinement at Fort Leavenworth.  ROT 81-82.

## GROUND (7)

The court has considered petitioner's ground (7) that the PTA should be declared void and his plea improvident because the military prosecutor testified at his Florida state trial, and disclosed statements made in his providency inquiry.  This claim was not presented as a separate issue to the ACCA; however, it was clearly presented to the CAAF as Issue VIII in petitioner's Supplement to Petition for Grant of Review (ROT 766) prepared by counsel.  The record shows this claim was "briefed and argued" to a military tribunal.  ROT 785-86.  It follows that Ground (7) must be denied under Burns.

In any event, respondent correctly points out that this ground is the same as petitioner's Ground (1), or at least it was presented as such to the military court.  Before the CAAF, counsel for Mr. Piotrowski stated this claim was "raised separately to highlight the fact that Appellant was never told" his providency inquiry would be used "to prosecute him for the same offenses" in state court.  Id. at 785.  As support for this ground, counsel stated the "same arguments and law cited under Issue I are

incorporated herein." No allegations were made to the CAAF in support of this claim that are different from those made in support of Issue I [Ground (1) herein]. The court has thus considered these arguments in connection with Ground (1). Any different fact allegations or arguments now made in support of Ground (7) were not presented to the military courts. Accordingly, they are unexhausted[9], and are dismissed without prejudice.


## GROUND (1)

In his federal habeas petition, Mr. Piotrowski states ground (1) as follows: " whether (his) pretrial agreement should be declared null and void and his plea improvident because, contrary to (his) understanding and belief, the State of Florida prosecuted him for the same manslaughter offenses that were covered by his army pretrial agreement." In the "Brief on Behalf of Appellant" filed in the ACCA (ROT 725), petitioner's Assignment of Error I was identically worded. Petitioner argued to the ACCA that his understanding was "supported by the fact that no Florida

---

[9]     If petitioner is actually claiming that CPT Birdsong should not have been allowed to testify at his state trial, that question was one for the Florida courts. Birdsong was subpoenaed by the State and allowed to testify by the state judge. Even if he was not a proper witness, petitioner does not explain how it impugns his military convictions.
    If petitioner is claiming that the Stipulation of Fact from his court-martial should not have been admitted as evidence at his state trial, the admissibility of evidence in that trial likewise was a question for the Florida court. Petitioner did not object to this evidence on the ground that its use was prohibited by his military PTA. The state court permitted its admission based upon the judge's authority to take judicial notice of the military court's records. Initially, the State sought to admit only Mr. Piotrowski's Stipulation of Fact. However, once the defense objection was overruled, Mr. Piotrowski through counsel asked that additional portions of the military record be introduced.

prosecution was undertaken" until Florida prosecutors learned he could be released before expiration of his full military term. ROT 729. Petitioner attached his affidavit dated March 11, 2004, to his Brief before the ACCA, in which he averred:

> A meeting was held in July 2001 at the office of then Captain Patrick Leduc, my Defense Attorney, my mother, Carolyn Olp, my Step father Gene Olp and myself to discuss my options for a 10 year pretrial agreement. CPT Leduc advised me that if I didn't accept this pretrial agreement that I would be charged with two counts of manslaughter which is 10 years of confinement for each count totalling 20 years, one count for Angela Beasley the victim and one count for the fetus. I was told there is no Federal law for the death of a Fetus and that with the other charges I would be looking at 80 years total. He stated that my best bet would be to fall on my own sword, or words to that affect (sic). CPT Leduc also stated that if I received 10 years or more the State of Florida would not come after me, or words to that affect (sic). . . . (My parents and I) believed that by receiving this pretrial agreement for 12 years would prevent an indictment from the State of Florida for the same charges." I believed CPT Leduc's advice was for what was known as fact, already determined from a prior agreement between the military and the State of Florida. I signed the pretrial agreement at that time. It was always my understanding that if I received more than 10 years from the military the State of Florida would be satisfied with the outcome and not prosecute me. To confirm my belief, I received from CPT Leduc a case summary from the State of Florida Sheriff's Office . . . (that) indicated that after consulting with CPT Birdsong and Sharon Vollrath of the State Attorney's Office, it was determined that the United States Army will be prosecuting me, or words to that affect(sic).

ROT 746-47.

Mr. Piotrowski alleges before this court that his understanding there would be no Florida prosecution was "the

fundamental basis underlying his willingness to enter the pretrial agreement", and he would not have signed the agreement but for this understanding. He reasons that his military sentence exceeded 10 years, so his prosecution by Florida violated the pretrial agreement. He also alleges that after his transfer to Florida for trial, CPT Leduc told him the State decided to prosecute when the victim's "family found out" he could be released from his military sentence "as early as seven years" due to good time credit.

The PTA in the record makes no reference to any state prosecution. ROT 558-61. The opinion of the ACCA expressly resolved this claim:

> In a post-trial affidavit, appellant alleges that his [PTA] also included a provision that the state of Florida would not prosecute him if he received a sentence to confinement in excess of ten years. The government has submitted affidavits that contradict this assertion. Our review of the [ROT], including: (1) the terms of appellant's written and signed [PTA], (2) the military judge's inquiry into the terms of this agreement, and (3) appellant's assurances under oath that the written pretrial agreement contained all the understandings and agreement in the case and that no one made any promises not written in his agreement, "compellingly demonstrates" to us the "improbability of [the] facts" alleged by appellant.

United States v. Piotrowski, AR 646, FN 3 (ACCA, Jan. 31, 2006) (citing United States v. Ginn, 47 M.J. 236, 248 (C.A.A.F. 1997). Respondent summarizes this claim as "ineffective assistance of counsel resulted in . . . a sub rosa agreement that (petitioner) would not be prosecuted by the State of Florida", and asserts it should be dismissed because it was briefed and argued before the

military courts.[11]  The court agrees petitioner's claim that there
was either an explicit or sub rosa agreement between state and
military authorities providing there would be no Florida
prosecution if he received a military sentence in excess of 10
years was "briefed and argued" in the military courts.  Mr.
Piotrowski may have believed then and perhaps still believes there
was a sub rosa agreement.  However, the record shows this claim was
fully and fairly considered by the military courts, and for that
reason it is denied under Burns.

        The record of the military plea proceedings, further shows
the military judge asked Mr. Piotrowski if the PTA "contain(ed) all
the understandings or agreements that you have in this case?"  Mr.
Piotrowski responded: "Yes, your Honor."  The military judge asked
"Has anyone made any promises to you that are not written into this
agreement in an attempt to get you to plead guilty?"  Mr.
Piotrowski responded, "No, Your Honor."  ROT 75.  The judge then
asked counsel if the exhibits were "the full and complete agreement
in this case" and were they "satisfied there are no other
agreements", to which they both responded affirmatively.  Id.
Finally, petitioner stated to the military judge that he had no
questions about the PTA and that he fully understood its terms.
ROT 84.  "This colloquy between a judge and a defendant before

_____

        [11]    In a Petition for Clemency filed after petitioner's convictions, his
civilian counsel also argued that prosecution by both the military and the State
of Florida was contrary to usual policy and amounted to double punishment.
Military defense counsel filed a separate Petition for Clemency asserting the
impending Florida trial would result in double punishment.  The question of
whether or not the second prosecution in Florida violated double jeopardy
principles is one for courts in Florida.

accepting a guilty plea is not pro forma and without legal
significance . . . . Rather, it is an important safeguard that
protects defendants from incompetent counsel or misunderstandings
. . . ." See Fields v. Gibson, 277 F.3d 1203, 1214 (10th Cir.),
cert. denied, 537 U.S. 1023 (2002).

In exchange for petitioner's pleas of guilty and
Stipulation of Fact, the Government did not proceed on those
specifications to which he pled not guilty, and the convening
authority limited his sentence as agreed. In addition, the
convening authority did recommend confinement at the Charleston
Naval Brig. The record further shows Mr. Piotrowski was informed
of the maximum penalties for his offenses before he pled. The
purpose of the effective assistance guarantee of the Sixth
Amendment is to ensure that criminal defendants receive a fair
trial so that the outcome of the proceeding can be relied upon as
the result of a proper adversarial process." Strickland v.
Washington, 466 U.S. 668, 691-92 (1984). Petitioner stated at the
plea proceeding that he had consulted with counsel and was
satisfied with the assistance he had received. ROT 85.

Before this court, Mr. Piotrowski has shifted emphasis away
from alleging that an agreement existed which was breached, to
alleging his understanding was based on the advice of his counsel,
CPT Leduc[12]. He now submits his affidavit signed in May 2009,

---

[12]    Mr. Piotrowski has not produced an affidavit from Mr. Leduc. He
presents one from his brother containing the brother's and their mother's hearsay
statements that "Capt. Leduc told her that if Joe would sign a plea bargain for
ten years, the prosecutor for the State of Florida would be satisfied and in
return would not prosecute Joe." Request for Leave to Amend Petition (Doc. 22)

stating: "This statement was made by Cpt. Leduc and was an integral part of why I accepted the military plea agreement." <u>Traverse</u> (Doc. 19) Appendix A at 3. He states his mother and stepfather "were also present in Cpt. Leduc's office when he made this statement." <u>Id</u>. To the extent petitioner has honed his claim to allege that his military defense counsel incorrectly advised him, either negligently or intentionally, the court finds these allegations might support, if anything, his unexhausted claim of ineffective assistance of counsel[13], rather than his exhausted claim

---

Exhib. B. He also presents one from his mother recalling "Leduc saying to Joe, 'if Joe would sign a plea agreement for ten years, the prosecutor said that the state of Florida would be satisfied and they would not come after Joe." <u>Traverse</u> (Doc. 19) Appendix A. In addition, he presents the affidavit of his first wife stating that after the court-martial she spoke to a lady she believed to be the Assistant DA from Florida who stated "they were real happy with the outcome of the trial and that Florida would not be seeking any additional time to be serve (sic)." <u>Id</u>. Exhib. A. These affidavits were each signed in 2009.

[13] In <u>Strickland</u>, the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. "[T]he (<u>Strickland</u>) test applies to challenges to guilty pleas based on ineffective assistance of counsel." <u>Hill v. Lockhart</u>, 474 U.S. 52, 58 (1985). Under <u>Strickland</u>, a habeas petitioner must first demonstrate that his counsel's performance "fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. In evaluating counsel's performance, the court must apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." <u>Id</u>. at 689. "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." <u>Id</u>. Second, the petitioner "must show that (counsel's) deficient performance prejudiced the defense. . . ." <u>Id</u>. at 687. In order to satisfy the prejudice prong, the petitioner must show a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. The Supreme Court has also held that when a criminal defendant waives trial by entering a plea, he assumes "the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts." <u>McMann v. Richardson</u>, 397 U.S. 759, 770 (1970). In <u>McMann</u>, the Court found the requirement that a defendant intelligently enter a plea agreement does not require that "all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing." <u>Id</u>.
The Tenth Circuit Court of Appeals has examined under what circumstances an attorney's erroneous advice can invalidate a plea agreement, and has generally held that a plea may be rendered involuntary when an attorney materially misinforms the defendant of the consequences of the plea. <u>Laycock v. State of N.M.</u>, 880 F.2d 1184, 1186 (10th Cir. 1989). On the other hand, they have squarely held that a "miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." <u>United States v. Williams</u>, 118 F.3d 717, 718

that the PTA was breached. His allegations that counsel's performance was deficient were not fully presented to the military courts, and are dismissed for that reason under <u>Watson</u>.

In sum, the court denies Ground (1) as fully and fairly considered to the extent it is based upon allegations that the PTA or a sub rosa agreement was breached, and as unexhausted to the extent it is now based upon alleged deficient and prejudicial performance of defense counsel.

## GROUND (8) - LACK OF JURISDICTION

Petitioner's ground (8) is that "the record of trial lacks sufficient evidence to demonstrate an appropriate exercise of court-martial convening power by Brigadier General (BG) Ferrell," and he cites <u>United States v. Allgood</u>, 41 M.J. 492 (CAAF 1995). As supporting facts, he alleges in his federal Petition that sometime before June 26, 2001, BG Ferrell, "BG Peterson's purported

---

(10th Cir.)(quoting <u>United States v. Gordon</u>, 4 F.3d 1567, 1570 (10th Cir. 1993), <u>cert</u>. <u>denied</u>, 510 U.S. 1184 (1994)), <u>cert</u>. <u>denied</u>, 522 U.S. 1033 (1997). In other situations where counsel miscalculated or erroneously estimated the length of a defendant's sentence, the Tenth Circuit has consistently characterized such error as a miscalculation that neither renders a plea involuntary nor counsel's performance deficient. <u>See</u>, <u>e.g.</u>, <u>Wellnitz v. Page</u>, 420 F.2d 935 (10th Cir. 1970)(finding plea voluntary even though counsel informed defendant he would "get 25 years" and defendant was actually sentenced to 100 years); <u>Braun v. Ward</u>, 190 F.3d 1181 (10th Cir. 1999), <u>cert</u>. <u>denied</u>, 529 U.S. 1114 (2000); <u>Fields</u>, 277 F.3d at 1213-14 (trial counsel's projections characterized as erroneous sentence estimate did not invalidate plea where trial counsel never told petitioner they had a promise or guarantee that by pleading guilty he would not receive a death sentence).

Mr. Piotrowski has not described bad faith acts on the part of CPT Leduc, or how he might prove actual prejudice after testifying he had not relied upon any agreement outside the written PTA. His allegations could simply indicate his misunderstanding of his counsel's statements. The court expresses no opinion on the merits of this claim, but notes that the facts alleged in support thus far are insufficient, when viewed apart from petitioner's speculation, innuendoes, and conclusions.

18

successor-in-command", referred his case to trial pursuant to General Court-Martial Convening Order (CMCO) Number 1, as amended by CMCO Numbers 4 and 9; and that on July 22, 2001, referred all general courts-martial convened by CMCO Number 1 to CMCO Number 22. He further alleges "the record of trial is devoid of any evidence that BG Ferrell personally evaluated or selected those members who ultimately sentenced petitioner." He claims the court-martial lacked jurisdiction as a consequence.

The Tenth Circuit recently set forth the standards for civil review of jurisdictional claims by military prisoners, which it emphasized are "independent of the military courts' consideration of such issues":

> "[C]ourts-martial are tribunals of special and limited jurisdiction whose judgments, so far as questions relating to their jurisdiction are concerned, are always open to collateral attack." <u>Givens v. Zerbst</u>, 255 U.S. 11, 19, 41 S.Ct. 227, 65 L.Ed. 475 (1921). . . .
> After <u>Burns</u>, we held that the Court had not changed preexisting law on the scope of our review of jurisdictional issues. (Citations omitted). However, subsequent cases in which only constitutional claims were raised have led to broad statements to the effect that any claim that has received full and fair consideration by the military courts is beyond the scope of federal review. <u>See</u>, <u>e.g.</u>, [<u>Lips</u>, 997 F.2d at 811](stating, in a case challenging evidentiary rulings and prosecutorial statements, that "if the military gave full and fair consideration to claims asserted in a federal habeas corpus petition, the petition should be denied"). By ignoring the separate basis for civil review of jurisdictional issues, these cases have generated confusion regarding whether the Burns standard applies to jurisdictional claims as well. We now reiterate that our review of military convictions is limited "generally to jurisdictional issues and to determination of whether the military gave fair

> consideration to each of the petitioner's
> constitutional claims," <u>Monk</u>, 901 F.2d at 888
> (emphasis added), and we clarify that our review
> of jurisdictional issues is independent of the
> military courts' consideration of such issues.

<u>Fricke</u>, 509 F.3d at 1289-90; <u>see</u> <u>also</u> <u>Wright v. Commandant, USDB</u>,

100 Fed.Appx. 709 (10th Cir. 2004). A court-martial "is a creature

of statute, and, as a body or tribunal, it must be convened and

constituted in entire conformity with the provisions of the

statute, or else it is without jurisdiction." <u>Id</u>. (citing

<u>McClaughry v. Deming</u>, 186 U.S. 49, 62 (1902)). This court has

reviewed petitioner's jurisdictional claim under these standards.

In briefs before the military court, counsel for petitioner

made the identical claim as raised in this pro se Petition, and

alleged the same facts in support. Counsel alleged that in January

2001, BG Peterson convened a general court-martial as memorialized

by CMCO Number 1; and that he amended CMCO Number 1 a few days

later and in March 2001, citing CMCO Numbers 4 and 9. Then, BG

Ferrell referred Piotrowski's case to trial pursuant to CMCO Number

1, as amended by CMCO Numbers 4 and 9; and later referred all

general courts-martial convened by CMCO Number 1 to Number 22. The

military appellate courts did not separately discuss this claim.

Instead, they generally stated:

> We have considered the record of trial,
> appellant's assignments of error, the matters
> personally raised by appellant pursuant to
> (<u>Grostefon</u>), and the government's reply thereto.
> We heard oral argument. . . ."

<u>ACCA opinion</u> ROT 2. They further stated: "We have considered the

remaining assignments of error and the matters personally raised by

appellant, and find them to be without merit." Id. at 5.

In Wright, the Tenth Circuit held that the claim that the convening authority did not personally appoint one of the court-martial members as required by 10 U.S.C. § 852(d)(2)[14] "does implicate the court-martial's jurisdiction." Id. (citing United States v. Ryan, 5 M.J. 97, 101 (C.M.A. 1978). A court-martial is created by a convening order of the convening authority. Allgood, 41 M.J. at 494 (citing RCM 504(d)). A convening order for a general or special court-martial shall designate the type of court-martial and detail the members . . . ." Id. at 494-95 (citing RCM 504 (d)(1)). However, RCM 601(b), Manual for Courts-Martial, United States [hereinafter R.C.M.], sets forth "[w]ho may refer" and specifically provides: "Any convening authority or a predecessor, unless the power to do so has been withheld by superior competent authority." See Allgood, 41 M.J. at 498; U.S. v. Gaspard, 35 M.J. 678 (ACMR 1992)(Under R.C.M. 601(b) any convening authority may refer charges to a court-martial convened by that convening authority or a predecessor.). In Allgood it was agreed that "a convening authority need not comply with the requirements of RCM 504 . . . when he refers a case to a court-martial already convened by his predecessor." Allgood, 41 M.J. at

_____

[14]    10 U.S.C. § 852(d)(2) pertinently provides:

When convening a court-martial, the convening authority shall detail as members thereof such members of the armed forces as, in his opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament.

495.

The charges in this case were referred to a court-martial convened by a predecessor-in-command. Nothing indicates that BG Peterson, who originally convened the court-martial, was other than a predecessor commander for purposes of R.C.M. Rule 601(b). Neither Peterson nor Ferrell is alleged to have lacked authority to issue convening orders detailing members to petitioner's court-martial.[15] Here, as in <u>Allgood</u>, the convening authority, BG Ferrell, cited on the record a specific court-martial convening order when he referred the charges for trial. The trial counsel, in reciting the jurisdictional facts at the beginning of petitioner's court-martial, correctly listed the numbers and dates of the convening orders. ROT 2. The court finds that the actions of the convening authority in selecting the panel members in Mr. Piotrowski's case are plainly reflected in the record[16], and that, on its face, the court-martial was properly convened.

Petitioner has argued lack of jurisdiction throughout his military appeals and before this court, but has never provided sufficient factual support for this claim. Here, as in <u>Allgood</u>, he did not object "on the basis of Article 25(d)(2)". In fact, he raised no objection to the jurisdiction of the court-martial, the

---

[15]    The Brief of Appellant also mentions COL Austin as "BG Peterson's purported successor in command" and having signed the pretrial agreement. Again, no facts are alleged to indicate COL Austin acted without proper authority.

[16]    The record shows the court-martial convening orders cited therein were those used in petitioner's case (ROT 500), that they were properly cited during the court-martial proceeding (ROT 174), and that the judge instructed each member to check the convening order to see that his name was on it. ROT 179.

manner of convening the court-martial, or the selection of members for the court-martial. He thus did not "develop a record supporting a contrary conclusion or inference." Allgood, 41 M.J. at 496. Nor has he alleged facts indicating he was prejudiced in any manner by perceived deficiencies in the convening process[17]. Ultimately, he elected to proceed to trial before a military judge alone and was found guilty of charges and specifications pursuant to his pleas of guilty.

The court concludes there is no support for this claim in either Allgood or the military court record. While there is no explicit statement of adoption of the selection of court members by the successor-in-command, this court, like the military court in Brewick, is not aware of any authority that so requires. Brewick, 47 M.J. at 732. Also as in Allgood, petitioner provides no

---

[17]     The Government argued that in Piotrowski's case there was a "straight-forward referral of charges to a court-martial convened by a predecessor for purposes of RCM 601(b)", and there was neither an objection at trial to the referral procedure nor demonstration of prejudice. The Government also cited a 2005 case that decided a claim like petitioner's, United States v. Starks, ARMY 20020224 (ACCA Mar. 10, 2005). In Starks, the Army Court held it "is well-settled that a convening authority may adopt court members selected by his predecessor in command." Id. at 2 (citing United States v. England, 24 M.J. 816, 817 (ACMR 1987); see also Allgood, 41 M.J. at 496)). The court in Starks noted that appellate defense counsel in that case "did not provide a scintilla of support for their assertion that MG Blount may not have adopted the court members listed on CMCO #22", and they "presume(d) regularity in the action of the convening authority (citations omitted)." They cited United States v. Brewick, 47 M.J. 730 (NMCCA 1997) and agreed with its rationale:

    [W]hile there is no explicit statement of adoption of the selection of court members by the successor-in-command, we are not aware of any authority that so requires. Allgood certainly does not mandate an explicit adoption statement. Id. at 732. The Brewick court concluded, "To the extent an 'adoption' is required or helpful, we can presume as much from his action in sending the charge to that court-martial, absent any evidence to the contrary."

Id. at 733.

evidence indicating Ferrell actually failed to properly adopt or select court members. The court concludes the record is sufficient to show that the convening authority appropriately selected the panel members in petitioner's case, and petitioner's allegations to the contrary are without factual or legal merit.


**UNEXHAUSTED CLAIMS**

In the Answer and Return, respondent presents that grounds (10) and (11) were not raised during military appellate review. In his Traverse, Mr. Piotrowski "concedes" these issues were not properly raised in the military courts. The record confirms that these claims were not fully presented to the military courts. The court concludes that under <u>Watson</u> these claims may not be reviewed by this court and must be dismissed, without prejudice.

As noted, this court previously dismissed petitioner's ground (9) claiming ineffective assistance of counsel, which he admitted in his Petition was not exhausted[18], and that dismissal was prior to issuance of the order to show cause. Consequently, respondent was not required to and did not respond to this claim in its Answer and Return. Although not specified in the order, this dismissal was without prejudice. The order of dismissal has not

---

[18] Mr. Piotrowski claimed the PTA was void and his plea improvident because his counsel was ineffective during plea proceedings and sentencing. As factual support for this claim, he alleged defense counsel Leduc "unlawfully advised" he was facing a maximum of 80 years confinement on the initial charges, which he later discovered was only approximately 40 years; advised him and his family that if he received at least ten years of confinement at his court-martial the State of Florida would not prosecute him; failed to object to the prosecutor's inflammatory arguments during sentencing; and advised Mrs. Piotrowski to divorce him without discussing the matter with Mr. Piotrowski.

been vacated.

After respondent filed its Answer and Return, Mr. Piotrowski filed a motion to stay this action (Doc. 15). Therein, he claimed to have "newly discovered evidence" of prosecutorial misconduct[19], and stated he was "in the process of filing a Writ of Error Coram Nobis back in the lower court[20]." He stated his intent to "supplement" his federal Petition with a new claim based upon this evidence, if denied relief in the military courts. This court denied the motion to stay (Doc. 17), and petitioner was again required to choose between proceeding in federal court on exhausted claims only or dismissing this action to exhaust new claims.

Petitioner also filed a Motion to Strike some of respondent's pleadings (Doc. 24). His arguments in this motion are nothing more than counter arguments to those pleadings (Docs. 18, 20, 21). This motion is denied because it is not supported by sufficient authority indicating any of respondent's pleadings must be stricken. To the extent necessary, this court allows these 3 pleadings under Rule 7 of the Rules Following 28 U.S.C. § 2254,

---

[19]     In support of this motion, Mr. Piotrowski alleged he "recently discovered" that the military prosecutor, CPT Birdsong, "was romantically involved with the petitioner's wife and is at present married to petitioner's ex-wife." He further alleged that defense counsel Leduc was operating under a conflict of interest in that he "appeared to be aware of the affair". He also alleged Leduc spoke with the victim's family not only on a professional level, but also on a personal level and attended a party at their home. The allegations regarding CPT Birdsong are an entirely new claim of prosecutorial misconduct; while the allegations regarding CPT Leduc may be an additional ground for petitioner's unexhausted claim of ineffective assistance of counsel.

[20]     No further information regarding any attempt to exhaust this military remedy has been forthcoming.

which authorizes a habeas court to expand the record. The court considered petitioner's counter arguments raised in his motion in making its determinations.

After his motion to stay was denied, petitioner filed his Traverse, in which he responds to the Answer and Return. In adition, despite the court's prior dismissal of claims not presented to the military courts, he again included allegations in support of his unexhausted claim of prosecutorial misconduct.[21] He again stated this is "newly discovered evidence" he "wishes to address in the lower court." The court reiterates that the claim of prosecutorial misconduct was not raised in the Petition, its addition by amendment was denied, and neither it nor petitioner's underlying allegations have been presented to the military courts[22]. If this claim had been included in the Petition, it would be dismissed as unexhausted. The court concludes that the portions of the Traverse regarding the alleged conduct of the prosecutor and conflict of interest of defense counsel are irrelevant to the court's consideration of the habeas claims that are presently properly before it.

Several days after filing his Traverse, and after respondent argued his unexhausted claims may never be reviewed in

---

[21]     Respondent filed a response to the Traverse (Doc. 21) arguing that petitioner improperly asserts new arguments in his Traverse to support his grounds (1), (7) and (8).  The court considered the Traverse and respondent's arguments in its determinations.

[22]     Rather than thoroughly address his failure to present these claims to the military appellate courts, petitioner continues to attempt to argue the merits of his unexhausted claims.

this or the military courts, Mr. Piotrowski filed a Motion for Leave to Amend Petition (Doc. 22). In this motion, he again seeks to "present new claims." In support, he generally alleges that if allowed to amend, he "will present claims of due process (5th Amendment), fair trial (6th Amendment), and ineffective assistance of counsel (6th Amendment) in a form suitable for this court to pass upon merits of the claims." Petitioner's motion for leave to amend his petition (Doc. 22) to add any new claim, including that of prosecutorial misconduct, is denied. Such a claim would simply be dismissed under Watson, because it has not been presented to the military courts.

In his Motion to Amend, petitioner now argues that under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) he must be allowed to raise his new claim in this action, even though it is unexhausted. He cites the holding in Pliler v. Ford, 542 U.S. 225, 239 (2004) that "staying the petition is the only appropriate course of action where an outright dismissal could jeopardize the timeliness of a collateral attack." He also cites O'Sullivan v. Boerckel, 526 U.S. 838 (1999) and argues that when a federal habeas petitioner failed to present his claims in state court and they are no longer available, state remedies are exhausted.

The court previously explained to petitioner that the AEDPA

does not apply to a petition filed by a military prisoner[23].
Moreover, petitioner misreads the cited authorities. The cited
cases do not hold that a petitioner who failed to exhaust state
remedies when they were available is simply disencumbered of the
exhaustion prerequisite and entitled to proceed with federal court
review. Instead, such a litigant must justify his failure to
present his claims when remedies were available by showing both
cause and prejudice for his failure. Otherwise, review in federal
court is foreclosed.

Petitioner did not provide an Amended Petition with his
motion for leave to amend, as required. He did include a "list
witnesses and their expected testimony", which he asserts "if true,
would be grounds for relief." Most of this "expected testimony"
relates to his claim that he pled in exchange for a promise that
Florida would not prosecute him if his military sentence exceeded

---

[23] To the extent this court suggested it could not consider a "mixed" petition and that a subsequent petition might be dismissed as abusive, it was not relying upon the gatekeeping provisions of the AEDPA. The AEDPA's bar to second and successive applications has been held "not (to) apply when a prisoner is challenging a military court-martial conviction." Ackerman v. Novak, 483 F.3d 647, 650 (10th Cir. 2007). The law applied to petitioner's unexhausted claims is that found in Burns and Watson, rather than the AEDPA or cases applying the AEDPA to § 2254 petitions by state prisoners. See Fletcher v. Outlaw, 578 F.3d 274, 277 FN4 (5th Cir. 2009)(and cases cited therein). Thus, this court does not hold that petitioner may be barred by AEDPA from filing a successive habeas petition in federal civil court raising his unexhausted claims once they are exhausted. Whether or not a subsequent petition is "abusive" is not justiciable until any such second petition is filed. "The doctrine of abuse of the writ defines the circumstances in which federal courts decline to entertain a claim presented for the first time in a second or subsequent petition for a writ of habeas corpus." McCleskey v. Zant, 499 U.S. 467, 470 (1991). "The government bears the burden of pleading abuse of the writ", and if it satisfies this burden, the petitioner must show cause and prejudice or probable actual innocence. Id. at 494-95; Murray v. Carrier, 477 U.S. 478, 491 (1986); LaRette v. Bowersox, 70 F.3d 986, 987 (8th Cir. 1995). In order to show cause, a petitioner must indicate that some "external impediment" prevented him from presenting his claims in a timely and procedurally proper manner.

ten years.[24]   This "evidence" does not provide any basis for petitioner to amend his petition, as this claim is already raised in his original petition.   The court considered these attachments as exhibits in connection with petitioner's Ground (1).

## RESPONDENT'S ARGUMENT OF NO MILITARY REMEDY

Shortly after the order denying the stay was entered, respondent filed its response (Doc. 18) opposing the motion to stay.   Respondent argues therein that petitioner's claims have all either been fully and fairly considered or are unexhausted; that petitioner has not shown cause or prejudice for his failure to present his new claims to the military courts and has thus waived those claims; that, in any event, he alleges insufficient facts and presents no evidence in support; and that his claims are without merit.   The court considered these arguments in its deliberations.

Also in opposition to a stay, respondent argues there is no

---

[24]    The remaining evidence goes to petitioner's new, unexhausted claim of prosecutorial misconduct.  He seeks leave to present evidence of the alleged affair between CPT Birdsong and petitioner's second wife, R Piotrowsi now Birdsong (R).  Petitioner alleges that Louis Birdsong and R were married on June 25, 2006, even though he initially claimed it was in 2002.  He specifies that the "newly discovered evidence (he) could not have known" consists of statements of A. Birdsong, the prosecutor's ex-wife (A), and M. Piotrowski, petitioner's first wife (M).  He alleges A is "expected to testify" that R left a message on the Birdsong's home answering machine "within weeks of the court-martial" saying "Hi honey, sorry I missed your call; I was putting the kids to bed (or words to that effect)".  Petitioner expects M to testify that during a break at the court-martial R told her about a date she had with Louis Birdsong.  However, M's affidavit states only that the two met to discuss the case and played pool.  Mr. Piotrowski claims that A's and M's testimony will show Louis Birdsong's "amorous feelings" for R "began during the court-martial".  He further claims A's testimony will show Louis Birdsong "had malicious motive in preferring numerous fictitious charges against (him)", went to the victim's family and Florida prosecutor seeking a second prosecution; and his defense attorney's conflict. The court agrees with respondent that petitioner's allegations regarding the alleged affair are conclusory at best.  However, no ruling is made on the merits of this unexhausted claim.

military jurisdiction or remedy available for collateral review of petitioner's new or unexhausted claims. Petitioner does not concede that no military remedy is available. The United States Supreme Court recently decided this issue contrary to respondent's arguments. In <u>U.S. v. Denedo</u>, ___U.S.___, 129 S.Ct. 2213 (June 8, 2009), the Court held that an Article I military appellate court has jurisdiction to entertain a petition for writ of error coram nobis challenging its earlier, and final, decision affirming a criminal conviction.[25] <u>Id</u>. at 2221-22 ([M]ilitary courts, like Article III tribunals, are empowered to issue extraordinary writs under the All Writs Act"; and "quite apart from the All Writs Act, . . . the NMCCA has jurisdiction to entertain (a) request for a writ of coram nobis."). In <u>Denedo</u>, the petitioner claimed, like Mr. Piotrowski, that his guilty plea was improvident due to ineffective assistance of counsel. The Government moved to dismiss for lack of jurisdiction contending the NMCCA had no authority to conduct post-conviction proceedings. The NMCCA and the CAAF on appeal held that standing military courts have jurisdiction to conduct "collateral review under the All Writs Act." The Supreme Court affirmed.

This court is puzzled by respondent's submission of <u>Denedo</u> as support for its position. <u>Denedo</u> clearly rejected the argument that military prisoners have no post-conviction remedy in the

---

[25]     The main basis for this argument, that the military court-martial is disbanded after trial is not persuasive. The same is true of a jury selected from a panel for a civil trial. In any event, the military appellate courts are to hear post-conviction claims.

military courts. <u>Denedo</u>, 129 S.Ct. at 2222 (citing Courts of Criminal Appeals Rule of Practice and Procedure 2(b) as "recognizing NMCCA discretionary authority to entertain petitions for extraordinary writs"); <u>see also</u> <u>Noyd</u>, 395 U.S. at 695 FN 7 (All Writs Act, 28 U.S.C. § 1651, applies to military courts.); Military Appeals U.S. Ct. of App. Armed Forces, 10 U.S.C. foll. § 867, Rule 4 (The CAAF has jurisdiction to "entertain original petitions for extraordinary relief including, but not limited to, writs of mandamus, writs of prohibition, writs of habeas corpus, and writs of error coram nobis."); Rule 18 (CAAF can entertain original petitions for extraordinary relief, including writs of error coram nobis); Rule 19(d)("a petition for writ of habeas corpus or writ of error coram nobis may be filed at any time"); and Rule 27 (Petition for Extraordinary Relief); <u>Loving v. U.S.</u>, 68 M.J. 1 (2009). The Court in <u>Denedo</u> also specifically held that the rule of finality, cited herein by respondent, does not prohibit military appellate courts' collateral review of their earlier judgments. If respondent's argument were correct, that a military prisoner cannot obtain post-appeal review in a military court when civil court review is available under § 2241, <u>Denedo</u> would effectively be nullified, since § 2241 is generally available to any military prisoner. The only portions of <u>Denedo</u> and <u>Loving</u> that "support" respondent's arguments are the dissents.

It has long been the established and effective practice of the military appellate courts, like state and federal courts, to exert their authority not only to hear direct appeals but to

collaterally review constitutional challenges to their decisions regarding convictions and sentences as well. This court has reviewed numerous § 2241 petitions by military prisoners over 3 decades, and many with claims that were exhausted in the military courts in post-appeal proceedings. Under <u>Burns</u> all available military remedies must be exhausted prior to, not after, § 2241 review. As a matter of comity and judicial efficiency, if nothing else, the military courts should continue to decide collateral challenges in the first instance and have the opportunity to correct their own errors, while applying their expertise in military law.

The more difficult question of whether or not military appellate courts can retain or assert jurisdiction over a collateral action raising Mr. Piotrowski's unexhausted claims once his military discharge has been executed, is one to be answered in the first instance by the military courts. Likewise, whether or not Mr. Piotrowski can present sufficient grounds for a writ of error coram nobis is for those courts to decide in the first instance. These are not issues that must or should be decided by this court before Mr. Piotrowski has made any attempt to present his unexhausted claims to the military appellate courts. If military tribunals refuse to hear his unexhausted claims because they have been procedurally defaulted, it is likely his new claims will be considered procedurally defaulted in federal civil court as well. Neither party has presented sufficient procedural or other facts or cited a clear, uniformly-applied military rule or case

upon which this court might base a finding that petitioner's unexhausted claims have already been procedurally defaulted in the military courts. This court does not know, and expresses no opinion as to, what specific military remedies may remain available to Mr. Piotrowski under his current circumstances[26]. Nevertheless, the court holds that its dismissal of petitioner's unexhausted claims is without prejudice to his attempting to exhaust any avenues of relief which may remain available to him, and his attempting to return to the district court once he has fully exhausted. See Laster v. Samuels, 325 Fed.Appx. 127, **2 (3rd Cir. 2009).

Briefly summarized, in a prior order the court held that petitioner's claim of ineffective assistance of counsel was not presented to the military courts and must be dismissed, without prejudice. In this Order, the court holds petitioner's claim that the military court-martial lacked jurisdiction is without merit, and his other exhausted claims were fully and fairly considered to the extent they were presented to the military courts. The court dismisses petitioner's unexhausted claims, including all grounds for his claims of ineffective assistance of trial defense counsel and prosecutorial misconduct. For all the foregoing reasons, the court denies Mr. Piotrowski's petition for writ of habeas corpus.

---

[26]     If Mr. Piotrowski actually failed to file a petition in the military court to exhaust his unexhausted claims before his military sentence expired, he may be required to overcome several hurdles, including providing proof of sufficient collateral consequences, before any sort of collateral action may be heard. Respondent's conclusory statement that he cannot prove such consequences does not convince this court that none arguably exist.

**IT IS THEREFORE ORDERED** that petitioner's Motion for Leave to Amend (Doc. 22) and petitioner's Motion to Strike and Expunge (Doc. 24) are denied.

**IT IS FURTHER ORDERED** that petitioner's unexhausted claims, including that of prosecutorial misconduct to the extent it is raised herein, are dismissed without prejudice.

**IT IS FURTHER ORDERED** that this petition for writ of habeas corpus is denied.

**IT IS SO ORDERED.**

**DATED: This 22nd day of December, 2009, at Topeka, Kansas.**

                                        s/RICHARD D. ROGERS
                                        **United States District Judge**